Filed 9/30/24  P. v. Blanche CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　v.<br><br>ANTHONY BLANCHE,<br><br>　　Defendant and Appellant. | B329475<br><br>(Los Angeles County<br>Super. Ct. No. NA011531) |

APPEAL from an order of the Superior Court of Los Angeles County, Chet L. Taylor, Judge.  Affirmed.

William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Anthony Blanche appeals from a postjudgment order denying his motion for a *Franklin*[1] proceeding.  The superior court found Blanche was ineligible for a youth offender parole hearing under Penal Code section 3051[2] because he was sentenced to life without the possibility of parole (LWOP) for his convictions of two counts of special circumstance first degree murder.  He was also convicted of attempted murder.  Blanche was 24 years old when he committed the offenses.

On appeal, Blanche contends section 3051 violated his federal and state constitutional rights to equal protection because under that section young adult offenders serving LWOP sentences for crimes they committed between the ages of 18 and 25 are ineligible for youth offender parole hearings but young adult offenders serving non-LWOP sentences and juvenile offenders who committed crimes before the age of 18 serving LWOP sentences are eligible.  Blanche also argues his LWOP sentence constituted cruel or unusual punishment in violation of the California Constitution.  (Cal. Const., art. I, § 17.)  We affirm.

---

[1]     In *People v. Franklin* (2016) 63 Cal.4th 261, 283-284, the Supreme Court held a juvenile offender who is eligible for a youth offender parole hearing pursuant to Penal Code section 3051 is entitled to a hearing to develop and preserve evidence of his or her youth-related characteristics and the circumstances at the time of the offense.

[2]     Further undesignated statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Evidence at Trial*[3]

1.    *The November 1991 murder and attempted murder*

On the night of November 20, 1991 Blanche went to Heather Donham's house to visit her and to retrieve his jacket and other belongings.  Donham lived with her mother, her mother's boyfriend Omeli Aulai, and her mother's children with Aulai.  Aulai and Blanche walked out to the sidewalk, followed by Keith Jones and Stephen Jordan, who had been visiting the residence.  Blanche and Jordan got into an argument over Donham, with each man claiming she was his girlfriend.  Blanche stabbed Jordan in the upper abdomen, and Jordan punched Blanche in the chin.  Jordan went inside the house to call 911, and Aulai followed.  Blanche chased Jones and fatally stabbed him in the back, shoulder, and mouth before fleeing.

2.    *The May 1992 murder*

On May 17, 1992 Blanche was living at an apartment with his close friend Michele Cespuglio, her young son, and Brenda Zaidi.  Brenda's husband, Safar Zaidi,[4] paid the rent for the apartment, but he did not live there.  Brenda told Blanche that he had to move out.  Blanche became enraged, tore a picture off

---

[3]    We grant Blanche's March 11, 2024 request for judicial notice of our prior unpublished opinion in *People v. Blanche* (Dec. 2, 1995, B087391) [nonpub. opn.] (*Blanche*).  (Evid. Code, §§ 452, subd. (d)(1) & 459.)  We summarize the trial evidence recounted in our prior opinion.

[4]    We refer to Brenda and Safar Zaidi by their first names to avoid confusion.

the wall, knocked over an entertainment center, and broke all the windows in the living room before leaving.  When Safar arrived at the apartment, he became furious when he saw the damage.  Blanche called Cespuglio to apologize, but Safar grabbed the phone and cursed and yelled at Blanche.  Two minutes later Blanche returned to the apartment, and Safar again yelled and cursed at him.  Banche grabbed a butcher knife from the kitchen, chased Safar out of the apartment and down the stairs, and stabbed him in the back before fleeing.  Safar survived an emergency surgery, but he later died due to blood clotting complications.

After his arrest, Blanche gave a recorded confession while in police custody, which was played for the jury.

### 3. *The defense case*

Blanche testified at trial on his own behalf.  His testimony was substantially similar to what he told police at the time of his arrest.  Blanche admitted he committed the crimes, but he claimed he acted in self-defense.

### B. *The Verdicts, Sentencing, and First Appeal*

On July 7, 1994 the jury found Blanche guilty of the first degree murder of Safar (§ 187, subd. (a); count 1), the first degree murder of Jones (§ 187, subd. (a); count 2), and the attempted murder of Jordan (§§ 187, subd. (a), 664; count 3).  The jury found true the multiple-murder special circumstance allegation. (§ 190.2, subd. (a)(3).)  The jury also found true with respect to counts 1 and 2 that Blanche personally used a deadly or dangerous weapon (§ 12022, subd. (b)) and as to count 3 that Blanche inflicted great bodily injury on Jordan (§ 12022.7).

4

On August 24, 1994 the trial court sentenced Blanche to LWOP on the two murder convictions. On the attempted murder conviction the court sentenced Blanche to a consecutive term of life with the possibility of parole, plus an additional determinate term of four years for the weapon use and great bodily injury enhancements.

Blanche appealed, and we affirmed. (*Blanche, supra*, B087391.)

C.     *Blanche's Motion for a* Franklin *Proceeding*

On February 10, 2023 Blanche moved for a *Franklin* proceeding to make a record of mitigating evidence tied to his youth. (See *In re Cook* (2019) 7 Cal.5th 439, 451 ["an offender entitled to a hearing under sections 3051 and 4801 may seek the remedy of a *Franklin* proceeding even though the offender's sentence is otherwise final"]; *People v. Franklin, supra*, 63 Cal.4th at pp. 283-284.) Blanche asserted he was convicted of two counts of murder and one count of attempted murder; he was 24 years old at the time of the crimes; and he was sentenced to LWOP. Blanche argued the exclusion from eligibility for youth offender parole hearings for 18-to-25-year-old young adult offenders who had been sentenced to LWOP violated his federal and state constitutional rights to equal protection (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a)) and the state Constitution's ban on cruel and unusual punishment (Cal. Const., art. I, § 17).

On February 24, 2023 the superior court denied Blanche's request for a *Franklin* proceeding. The court explained in a written order, "In 1994, Petitioner was found guilty of two counts of murder in the first degree and one count of attempted murder.

5

He was twenty-four years old at the time he committed his crime and, consequently, was sentenced to a state prison term of life without the possibility of parole.  [¶]  Under Penal Code section 3051, certain juvenile and youthful offenders are entitled to a youth offender parole hearing for the purpose of reviewing whether an offender is suitable for parole.  However, the terms of Penal Code section 305l(h) expressly exclude life without the possibility of parole offenders who were 18 years old or older at the time they committed the offenses from having such a hearing. Therefore, Petitioner's request for such a hearing is denied."

Blanche timely appealed.

## DISCUSSION

A.  *Section 3051 Does Not Violate Blanche's Constitutional Right to Equal Protection*

"Section 3051 provides that, at a time designated in the statute, the Board of Parole Hearings must hold a parole hearing 'for the purpose of reviewing the parole suitability of any prisoner who was 25 years of age or younger . . . at the time of the controlling offense.'  (§ 3051, subd. (a)(1); *id.*, subd. (d).)  How much time must pass before an eligible youth offender receives a parole hearing depends on the length of the original sentence for the "'[c]ontrolling offense,'" a term defined to mean 'the offense or enhancement for which any sentencing court imposed the longest term of imprisonment.'  (*Id.*, subd. (a)(2)(B).)  An offender sentenced to a determinate term becomes eligible for parole after 15 years (*id.*, subd. (b)(1)); an offender sentenced to an indeterminate life term of fewer than 25 years to life becomes eligible after 20 years (*id.*, subd. (b)(2)); and an offender sentenced to an indeterminate life term of 25 years to life, or an

6

offender sentenced to life without parole for a crime committed before the age of 18, becomes eligible after 25 years (*id.*, subd. (b)(3), (4)).” (*People v. Hardin* (2024) 15 Cal.5th 834, 842-843 (*Hardin*).)

“Certain persons are, however, categorically ineligible for youth offender parole hearings, including offenders sentenced for multiple violent or serious felonies under the ‘Three Strikes’ law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12); offenders sentenced for sex offenses under the One Strike law (*id.*, § 667.61); and offenders who, ‘subsequent to attaining 26 years of age, commit[] an additional crime for which malice aforethought is a necessary element of the crime or for which the individual is sentenced to life in prison.’ (§ 3051, subd. (h).) The statute also excludes those who . . . are sentenced to life without parole for a controlling offense committed after reaching the age of 18. (*Ibid.*)” (*Hardin, supra*, 15 Cal.5th at p. 843.)

Blanche contends section 3051’s exclusion of young adult offenders with LWOP sentences from eligibility for a youth offender parole hearing violated his federal and state constitutional rights to equal protection. The Supreme Court recently rejected this argument in *Hardin, supra*, 15 Cal.5th at page 864.

In *Hardin*, Tony Hardin was sentenced to LWOP following his conviction of first degree murder with a special circumstance finding for an offense he committed when he was 25 years old. (*Hardin, supra*, 15 Cal.5th at p. 840.) Hardin asserted section 3051 violated his right to equal protection because “once the Legislature decided to expand [youth offender parole] opportunities to young adults, it could not rationally treat those sentenced to life without parole differently from those convicted

7

of other serious crimes and serving lengthy parole-eligible sentences." (*Hardin*, at p. 846.) The Supreme Court clarified the standard for rational basis review of an equal protection claim, explaining, "[W]hen plaintiffs challenge laws drawing distinctions between identifiable groups or classes of persons, on the basis that the distinctions drawn are inconsistent with equal protection, courts no longer need to ask at the threshold whether the two groups are similarly situated for purposes of the law in question. The only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review. The burden is on the party challenging the law to show that it is not." (*Id.* at pp. 850-851.)

Under rational basis review, applicable here, a court "presume[s] that a given statutory classification is valid 'until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable.' [Citation.] The underlying rationale for a statutory classification need not have been 'ever actually articulated' by lawmakers, nor 'be empirically substantiated.'" (*Hardin, supra*, 15 Cal.5th at p. 852.) The court reviewed section 3051's legislative history and observed that "in designing section 3051, the Legislature consciously drew lines that altered the parole component of offenders' sentences based not only on the age of the offender (and thus the offender's amenability to rehabilitation) but also on the offense and sentence imposed. The lines the Legislature drew necessarily reflect a set of legislative judgments about the nature of punishment that is appropriate for the crime." (*Hardin*, at p. 855.) The court acknowledged that it "may be true," as Hardin had argued, that the crime-based categories that affect at what age an offender is eligible for relief may not be rationally related to the purpose of expanding

8

opportunities for early release based on the attributes of youth. (*Ibid*.)  But, the court continued, the Legislature was aware of this point, and "nonetheless crafted a statutory scheme that assigns significance to the nature of underlying offenses and accompanying sentences."  (*Ibid*.)  Therefore, the court reasoned, "[t]he statutory framework indicates that the Legislature aimed to increase opportunities for meaningful release for young adult offenders, while taking into account the appropriate punishment for the underlying crimes, depending on their severity."  (*Ibid*.)

The Supreme Court held Hardin could not establish that "the Legislature's decision to exclude offenders convicted of special circumstance murder from the youth offender parole system" is 'so devoid of even minimal rationality that it is unconstitutional as a matter of equal protection.'"[5]  (*Hardin, supra*, 15 Cal.5th at p. 859.)  The court explained that section 190.2 adequately separates out the most egregious murders (special circumstance murders), which are subject to the most severe punishment—death or LWOP—from other murders (*id*. at p. 859), and therefore, "it is difficult to see how the Legislature that enacted section 3051 could have acted irrationally in singling out special circumstance murder as a particularly culpable offense."  (*Id*. at p. 860.)  Accordingly, Hardin failed to show "that the exclusion of offenders who are serving sentences of life in prison without the possibility of parole for a crime committed after the age of 18 from youth offender parole eligibility is irrational."  (*Id*. at p. 864.)

---

[5]      In *Hardin*, the defendant only raised an equal protection challenge under the equal protection clause of the Fourteenth Amendment of the United States Constitution.  (*Hardin, supra*, 15 Cal.5th at p. 847, fn. 2.)

Similar to the defendant in *Hardin*, Blanche was sentenced to LWOP after he was convicted of special circumstance murder. In his reply brief Blanche contends *Hardin* does not preclude his equal protection argument that there is no rational basis to distinguish between young adult offenders and juvenile offenders sentenced to LWOP. Blanche is correct that the Supreme Court in *Hardin* did not consider this equal protection challenge, but the court observed that the Court of Appeal (this court) had held, and Hardin did not dispute, that it was unnecessary to address this argument because "the Legislature acted reasonably in distinguishing between offenses committed before and after the age of 18 because the Eighth Amendment (and the law more generally) makes the same distinction." (*Hardin, supra*, 15 Cal.5th at p. 846.)

Blanche fails to show that the Legislature acted irrationally in granting youth offender parole hearings to juvenile offenders with LWOP sentences but denying such hearings to young adult offenders with LWOP sentences. As explained by the Court of Appeal in *People v. Sands* (2021) 70 Cal.App.5th 193, 204 in rejecting a similar equal protection challenge to section 3051, "The Legislature had a rational basis to distinguish between offenders with the same sentence (life without parole) based on their age. For juvenile offenders, such a sentence may violate the Eighth Amendment. [Citations.] But the same sentence does not violate the Eighth Amendment when imposed on an adult, even an adult under the age of 26." The *Sands* court reasoned "the Legislature could rationally decide to remedy unconstitutional sentences but go no further." (*Sands*, at p. 204; accord, *In re Murray* (2021) 68 Cal.App.5th 456, 463-464 [rejecting equal protection challenge to section 3051 based on the

different treatment of juvenile and young adult offenders sentenced to LWOP because "the United States and California Supreme Courts have found the line drawn between juveniles and nonjuveniles to be a rational one"]; *People v. Morales* (2021) 67 Cal.App.5th 326, 347 ["for purposes of LWOP offenders, the line drawn at 18 is a rational one"]; *People v. Acosta* (2021) 60 Cal.App.5th 769, 779 ["[T]here is a rational basis for distinguishing between juvenile LWOP offenders and young adult LWOP offenders: their age."].)

B.    *Section 3051 Does Not Violate the State Constitutional Prohibition Against Cruel or Unusual Punishment*

Blanche contends his LWOP sentence constituted cruel or unusual punishment under article 1, section 17 of the California Constitution.[6] He acknowledges that his sentence did not constitute cruel or unusual punishment when it was imposed in 1994. Instead, he argues that sections 3051 and 4801[7] rendered his LWOP sentence constitutionally excessive because the Legislature, in enacting the sections, acknowledged that youthful

---

[6]    Blanche does not contend his sentence constitutes cruel and unusual punishment under the Eighth Amendment of the United States Constitution.

[7]    Section 4801, subdivision (c), provides that "[w]hen a prisoner committed his or her controlling offense . . . when he or she was 25 years of age or younger, the board [of parole hearings], in reviewing a prisoner's suitability for parole pursuant to Section 3041.5, shall give great weight to the diminished culpability of youth as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law."

11

offenders who commit serious or violent offenses before they turn 26 years old are less culpable than older offenders, but it denied youth offender parole hearings for young adult offenders sentenced to LWOP.  Blanche has failed to meet his burden to show his LWOP sentence constituted constitutionally excessive punishment.

In *In re Palmer* (2021) 10 Cal.5th 959, 971-972, the Supreme Court held with respect to excessive punishment claims under the California Constitution that "the court's inquiry properly focuses on whether the punishment is 'grossly disproportionate' to the offense and the offender or, stated another way, whether the punishment is so excessive that it "'shocks the conscience and offends fundamental notions of human dignity."'" (Accord, *In re Butler* (2018) 4 Cal.5th 728, 746 ["A sentence violates the prohibition against unconstitutionally disproportionate sentences only if it is so disproportionate that it 'shocks the conscience.'"].)  *Palmer* articulated "three analytical techniques to aid our deferential review of excessiveness claims: (1) an examination of the nature of the offense and the offender, with particular attention to the degree of danger both pose to society; (2) a comparison of the punishment with the punishment California imposes for more serious offenses; and (3) a comparison of the punishment with that prescribed in other jurisdictions for the same offense." (*Palmer*, at p. 973.)  The Supreme Court added, "A claim of excessive punishment must overcome a 'considerable burden' [citation], and courts should give "'the broadest discretion possible"' [citation] to the legislative judgment respecting appropriate punishment." (*Id.* at p. 972.)

With respect to juvenile offenders, in *Miller v. Alabama* (2012) 567 U.S. 460, 479, the United States Supreme Court held

that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders" (who committed their crime before they turned 18 years old).  The court's decision in *Miller* followed its decision in *Roper v. Simmons* (2005) 543 U.S. 551, 574 (*Roper*), which held the Eighth Amendment prohibited the imposition of the death penalty for juvenile offenders.  In *People v. Caballero* (2012) 55 Cal.4th 262, 268, the California Supreme Court held, in the context of a 110-years-to-life sentence imposed on a juvenile for nonhomicide offenses, that parole-eligible sentences for juvenile offenders violate the Eighth Amendment if the parole eligibility date falls beyond the offender's natural life expectancy.

The California Supreme Court in *People v. Flores* (2020) 9 Cal.5th 371, 429, considered whether the Eighth Amendment's prohibition on the death penalty for juvenile offenders under *Roper* should apply to youthful offenders who commit crimes between the ages of 18 and 21.  The court rejected the defendant's argument that the Legislature's enactment of section 3051, subdivision (a)(1), providing youth offender parole hearings to most youthful offenders who were 25 or younger at the time of their commitment offense, supported a "categorical bar on the death penalty for individuals between the ages of 18 and 21 at the time of their offenses." (*Ibid*.; accord, *People v. Tran* (2022) 13 Cal.5th 1169, 1234-1235 [rejecting argument "that imposing the death penalty on persons for crimes committed while they were 18 to 20 years old violates the state and federal Constitutions because it is cruel and unusual punishment"]; *People v. Powell* (2018) 6 Cal.5th 136, 191 [death penalty did not constitute cruel and unusual punishment in violation of the

federal and state Constitutions where defendant was 18 years old at the time of the killing].)

The Courts of Appeal have applied a similar analysis to Eighth Amendment challenges to young adult LWOP sentences. As the court explained in *In re Williams*, 57 Cal.App.5th 427, 439, "If the Eighth Amendment does not prohibit a sentence of death for 21 year olds, then most assuredly, it does not prohibit the lesser LWOP sentence."  (Accord, *People v. Acosta, supra*, 60 Cal.App.5th at pp. 769, 782 [LWOP sentences did not violate Eighth Amendment where defendant was 21 years old at the time of the murders]; *People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1020, 1030-1032 [rejecting an 18-year-old defendant's contention his LWOP sentence was cruel and unusual punishment under the Eighth Amendment].)

Blanche argues that the cases that found young adult LWOP sentences did not constitute cruel and unusual punishment relied on the Eighth Amendment, and not article I, section 17 of the California Constitution, which prohibits cruel *or* unusual punishment.  But Blanche does not provide any authority or rationale justifying a different result under the California Constitution.  And, as the California Supreme Court observed in *Hardin, supra*, 15 Cal.5th at page 847, footnote 2, with respect to Hardin's equal protection challenge under the California Constitution, there is ""no reason to suppose" that federal equal protection analysis would yield a result different from what would emerge from analysis of the state Constitution.'" (See *People v. Baker* (2018) 20 Cal.App.5th 711, 733 ["There is considerable overlap in the state and federal approaches. 'Although articulated slightly differently, both standards prohibit punishment that is "grossly disproportionate" to the crime or the

14

individual culpability of the defendant.' [Citation.] 'The touchstone in each is gross disproportionality.'"].)

Applying the analytical framework established by *In re Palmer, supra*, 10 Cal.5th at page 973, we conclude Blanche's LWOP sentence does not constitute cruel or unusual punishment under the California Constitution. Blanche was convicted of two special circumstance murders and attempted murder when he was 24 years old, and we must defer to the Legislature's determination that his special circumstance murder convictions warranted the severe punishment of LWOP. (*Id.* at p. 972 [the Legislature is given "considerable latitude in matching punishments to offenses" because "'[t]he choice of fitting and proper penalties is not an exact science, but a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, and responsiveness to the public will'"].) Blanche's LWOP sentences for the two special circumstance murders (committed just six months apart) is not "'grossly disproportionate' to the offense and the offender," nor is it "so excessive that it "'shocks the conscience and offends fundamental notions of human dignity.'"" (*Palmer*, at p. 972; see *In re Butler, supra*, 4 Cal.5th at p. 746.)

15

## DISPOSITION

The order denying the *Franklin* proceeding is affirmed.

FEUER, J.

We concur:


SEGAL, Acting P. J.


STONE, J.